For the morning is 22-2112, Valdez v. Lujan Grisham. We have a somewhat unusual circumstance here. Appellant is not present. Nevertheless, we want to hear whatever arguments are available from advocates who are available. And Appellee is here and is prepared to argue. Therefore we will hear the argument from Appellee if you'll make your appearance and then proceed. Thank you, Chief Judge. May it please the Court. My name is Kyle Duffy and I'm here on behalf of Defendants Governor Michelle Lujan Grisham, former Secretary Scrace and Secretary Patrick Allen. I would like to thank the Court for allowing me to proceed with my presentation, although I would note for the record that Defendants did not request a plaintiff's. This largely moot appeal is another misguided attempt to have the Court second guess the decision of public health experts to implement a carefully crafted vaccine mandate at the height of the COVID-19 pandemic. But this Court should reject the challenge for three reasons. First, plaintiff's declaratory and injunctive claims are moot and are not claims fail on the merit, as the vaccine mandate survives rational basis review and did not violate the contracts clause. And lastly, with regard to plaintiff's claims for damages, those are barred by both qualified and sovereign immunity. And on that point, Mr. Duffy, I'm glad you agreed to be here for an argument because I want to pursue this line of questions with you. Let's assume for the moment that we accept that the prospective claims are moot and therefore we're stuck with, not stuck with, we have the damages claims. As it relates to those, are we obliged to reach the sovereign immunity issue because it implicates our jurisdiction and before reaching the merits? I mean, the District Court didn't reach the sovereign immunity, didn't reach qualified immunity, just went straight to the merits. Now, one could argue that there was a basis for doing that because prospective claims were there and it had to decide whether it was going to grant an injunction and grant declaratory relief. Well, under the assumption of my question, that's not before us now. Those claims are gone. And so all we're doing is looking at the damages claims. We have your argument for sovereign immunity. We have your argument for qualified immunity. Because of the nature of it, my question is, are we obliged or required to reach that before engaging in a merits review? And my qualification to that is, is that answer affected by the posture of how you have argued this? Because as I understood the argument both below and above, sovereign immunity and qualified immunity were alternative grounds. They were not the, you didn't come out the chute saying, don't touch me because I got sovereign immunity. That was an alternative ground. And so are we obliged to do that? One. Two, is it preferable that we do that? Thank you, Chief Judge. I believe you are still required to address the sovereign immunity, even though it was raised as an alternative argument below. This case, it was, we argued it in sort of a belt and suspenders and another belt and another belt sort of argument, as there were many ways that I believe the court could have dismissed the action below. Yes, but, but the belt and suspenders generally take the opposite way. That one goes with the threshold jurisdictional argument and then reaches the others. And since sovereign immunity is sort of a weird bird in the sense that you can waive sovereign immunity, why shouldn't we view you as having waived us viewing it as a threshold matter? In other words, that by the nature of how you argued this, you didn't tell us we have to, I mean, your argument didn't say, Hey guys, don't touch us because we got sovereign immunity that came later. And so why can't we view that the order of operations as being way? Yes. Well, I believe so. We did not address sovereign immunity off the bat because it seemed like plaintiff's primary claims were geared towards injunctive and declaratory relief. And at the time that this was in the case, it was, it appeared there was a possible exception for sovereign immunity under ex parte young. So we've limited our sovereign immunity argument only for the damages claim. But even then it was not, it was not put front and center as it relates to the damages claims. I realized there was ex parte young, but I'm talking to, I mean, even now, if I went back to your appellate brief, I mean, it's like a footnote. I mean, so, so why, why, and I'm not saying this is dispositive of anything. We still got the claim that the merits issues, but I am saying, uh, do we have the flexibility to decide to do what the district court did now as we sit here and just reach the merits as opposed to reaching sovereign immunity? Well, I guess I would agree that you do have some flexibility to decide which issue to address first. And with regard to, I mean, simply putting it in the footnote, I would note that plaintiff doesn't even mention sovereign immunity or qualified immunity. Whose interest is it to raise sovereign? I mean, that's, that's true. But in their reply brief, they don't bother to rebut that point at all. And it appears they've conceded it in fact. Um, so with regard to plaintiff's declaratory and injunctive claims, Val does as an initial matter admits that her claims are moot with regard to, um, wanting to go to the state fair while Blackford, uh, the nurse at Presbyterian does not make such a concession. It is undisputed, or at the very least it cannot reasonably be disputed that the state imposed vaccine mandate was rescinded nearly a year ago in August. Accordingly, there's no longer any live controversy for this court that decide or to enjoy, nor does any moon exception apply because it is absolutely clear that this challenge vaccine mandate cannot reasonably be expected to occur in the future. As we pointed out in our recent letter of supplemental authority, the governor allowed the public health emergency to terminate on April 1st of this year. I note that this was done after we prevailed at the district court level and after we prevailed preliminarily on appeal with this court previously holding, um, that plaintiffs were likely to lose on the merits. This was not some act of gamesmanship, but rather following the science. Nor do defendants have any history of moving the goalpost like was the case in Roman Catholic or tandem. Um, at this point, the possibility of another mandate is entirely speculative. Let me, let me understand your, um, view on Blackford's, uh, resistance on the mootness front in part because of, uh, the, uh, PHF, P H O of December 19th that referenced, um, what the centers for the federal government into the centers for Medicare and Medicaid services requires in terms of vaccination. I guess the long and the short of it would be is what is there relief that would be possible to them from the state in light of the federal mandate? And I guess I'm looking to you as to whether that you're aware of any cases where you, where we have this indirect relationship thing. In other words, you have the third party saying you sec view party need to do this. And, and the only person who's sued in this action is the person who is directed to do something. What? And in that situation, what is there any potential relief that Blackford could get from your defendants? I'm not aware of any, uh, explicit case dealing with this issue. I must admit that. However, I believe the court can apply just a standard article three standing analysis and determine that as of that time in August, our orders just simply required hospitals and congregate care facilities to follow the CMS rule. So hypothetically, if the court didn't join our order, um, they would still be, uh, plaintiff Blackford's employer would still be required to follow the CMS rule, which had the vaccine mandate. So there'd be no redress ability on under any order that the court could issue against us solely. Um, let me just hear your response to this. Why, why, why couldn't they say that we could require them? I mean, this, this following, uh, the requirements is a condition of participation in Medicare and Medicaid, right? Why couldn't we direct the state? Well, look, you know, this is unconstitutional. You just got to get out. You can't, you can't deal with this. You can't deal with the federal government if it's going to require you to impose an unconstitutional requirement. Well, I would note that, I mean, first of all, the, the Supreme court did uphold the CMS requirement and Biden versus Missouri. Um, and, and so that, that really isn't an issue here. And it really wasn't argued. It wasn't preserved below or, uh, presented in the briefs. Um, at least as far as I could tell on appeal. Uh, so it's really not before this court. Um, in some, uh, I would, uh, note that even if there was some parade of horribles and some unforeseen surge, any new mandate that could theoretically be imposed would involve a new vaccine based on updated science would be addressing new variants and would have totally different facts on the ground. So, so the fact is that this challenge vaccine mandate there, it is absolutely clear. It cannot reasonably be expected to occur in the future. Accordingly plaintiff's injunctive and declaratory claims are moot. But even if they were not moved, the vaccine mandate survives on the constitutionality with regard to plaintiff's substantive due process and equal protection claims. The vaccine mandate is subject to rational basis for view because it does not discriminate against suspect classification or infringe upon a fundamental right. Plaintiff's here made absolutely no effort to provide a careful description of the purported fundamental rights at issue as required by Glucksberg. Instead, they rely on cherry picked general statements from distinguishable case law with regard to plaintiff's purportedly fundamental right to quote bodily integrity. They rely namely on Harper, Briggins and Kruzan, but those cases have no bearing on this case. Unlike the plaintiffs or persons at issue in those case plaintiffs here had a, had a choice that a choice to accept the vaccine, qualify for an exemption, pay a fine, or stop working at a hospital during a pandemic, or don't attend the state fair during the pandemic. We admit those are hard choices, but they were choices nonetheless, unlike the plaintiffs or the defendants and Harper, Briggins and Kruzan who were either imprisoned and being forcibly injected against their will, or were unconscious and in a vegetative state and Kruzan. Nor do those cases involve vaccines meant to address a collective evil, unlike Jacobson, which is squarely on point. With regard to plaintiff Blackford's purported fundamental right to work, they relied solely on Truex, which is a case from the Lochner era of the Supreme court's jurisprudence, which is long since moved away from. And while Truex did hint towards some generalized right to engage in quote, the common occupations of life, it stopped short of declaring that a fundamental right. Indeed, this court itself held and Gutman that the right quote, the right to practice and one's chosen profession does not invoke heightened scrutiny. And even if there was such a right, the vaccine mandate here did not prevent plaintiff Blackford from engaging in the practice of nursing. Um, and it simply prevented her from working at a hospital on vaccinated at bottom. The question is whether plaintiffs had a fundamental right to work in a hospital or attend the state fair during a pandemic. They did not. Accordingly, the vaccine mandate would be subject to rational basis review, which it easily survives stemming the spread of COVID-19 is unquestionably a compelling, at least legitimate government interest. And as the district court observed, there was ample evidence at the time and guidance from the CDC that the vaccines were both safe and effective at preventing COVID or preventing infection. And while it is true that after our vaccine mandate was implemented, there were variants that were unforeseen, the Delta variant, the Omicron variant that were able to cause some breakthrough infections. This fact alone does not render the vaccine mandate wholly irrational, especially considering that the vaccine mandate or the science continued to show that the vaccine provided robust immunity against serious illness and death. Nor were defendants required to narrowly tailor the mandate to account for natural immunity. First, the CDC guidance at the time continued to show that the vaccines provided more robust immunity than previous infection. And even if that was not the case, since we're under rational basis review, there's no requirement for a narrow tailoring. In a public briefing, they kept, uh, they were, they kept making the statement that, uh, being, uh, having had the vaccine provided more protection than the, uh, not the vaccine. I'm sorry. Having had the, having COVID provided more protection than the vaccine. Um, is there, I mean, is there anything in the record to your knowledge that supports that premise? I think there's a couple of footnotes possibly in their complaint with just hyperlinks and I'm not, it seemed like they were, they were definitely non-governmental, uh, websites. I'm not even sure for all I know they were, they were blog posts. Other than that, there really wasn't any evidence in the record that I could tell. But even if there was some sort of evidence, we would go back to Jacobson, in which case Jacobson made offers of proof that there were, you know, uh, doctors out there saying that the smallpox vaccine was ineffective, that caused all these issues. And the Supreme court said, Hey, that there right now we're, we're a court of law and we have to defer to the public health experts when there's a rational basis for their decision. And here there was with regard to a plaintiff's, uh, contracts clause claim that also fails on the merits because they made no allegations to show a substantial impairment of their contracts. And even if there was, uh, the mandate was appropriate and a reasonable means of advancing their state interest. And if I may finish very briefly, your honors, uh, turning to the last point of sovereign and qualified immunity, as mentioned earlier, plaintiffs could not show that, uh, defendants violated a constitutional right, let alone a clearly established right. Indeed, this court recently and Hinkle family fund center versus Lujan Grisham, 2022 WL one seven nine seven two one three eight found that defendants were entitled to qualified immunity. Uh, with that, um, I, I rest. Thank you, your honors. Thank you. Counsel cases submitted.